**LANCE ROOFING COMPANY, Inc., et al.**

v.

**James D. HODGSON, Secretary of Labor, United States Department of Labor, et al.**

Civ. A. No. 16012.

United States District Court, N. D. Georgia, Atlanta Division.

May 23, 1972.

Stokes, Boyd & Shapiro, Atlanta, Ga., for plaintiffs.

L. Patrick Gray, III, Asst. Atty. Gen., Dept. of Justice, Richard F. Schubert, Solicitor of Labor, Dept. of Labor, Washington, D. C., Stanley M. Baum, Asst. U. S. Atty., Atlanta, Ga., for defendants.

Before BELL, Circuit Judge, and EDENFIELD and FREEMAN, District Judges.

EDENFIELD, District Judge:

Plaintiffs are four construction companies which have been issued citations and proposed assessments of fines by defendant Hodgson, the Secretary of Labor, pursuant to the Occupational Safety and Health Act of 1970 ["the Act"], 29 U.S.C. § 651 et seq. (1970). To prevent the proposed fines from becoming uncontestable, plaintiffs timely filed "notices of contest" in accordance with the Act and the Secretary duly filed complaints against each plaintiff with the Occupational Safety and Health Commission ["the Commission"] alleging violations of the Act. Plaintiffs answered the Secretary's complaints and then filed demands with the Commission for "procedural due process" and jury trials. The Commission summarily denied the demands of three of the plaintiffs and is apparently still considering the demands of the fourth. The cases against plaintiffs have been assigned by the Commission to its hearing examiners and are pending.

Plaintiffs have brought this complaint seeking declaratory and injunctive relief on the grounds that certain sections of the Act which defendants are enforcing against them are unconstitutional on their face and as applied. Specifically, they contend that the "civil" penalties which may be imposed by the Commission for violations of the Act are, in fact, "criminal" penalties.[1] They argue that anyone charged with a violation who chooses to challenge the imposition

---

1. Plaintiffs also attack the constitutionality of a number of other provisions of the Act. There is some question as to their standing to challenge some of those provisions, but since we will not reach the merits of the complaint we have highlighted only the major claim asserted.

of these so-called "civil" penalties[2] before the Commission must be accorded all the constitutional safeguards provided in a criminal proceeding, including trial by jury. Since the Act itself does not provide such safeguards, plaintiffs desire a declaration that it is unconstitutional. And since the Commission has refused to grant them such safeguards, they wish to enjoin the proceedings initiated before the Commission against them.

Defendants argue that the so-called "civil" penalties which the Commission may impose are not "criminal" in nature but merely regulatory, and they move for summary judgment on the merits. However, they also argue that plaintiffs have failed to exhaust their administrative remedies, and they ask the court to dismiss the complaint on that ground.

Jurisdiction is conferred by 28 U.S.C. § 1331(1970)[3] and a three-judge court was convened pursuant to 28 U.S.C. § 2282 (1970). We hold that the complaint must be dismissed for failure to exhaust administrative remedies.

The Act is a comprehensive and seemingly unique piece of legislation whose declared purpose is "to assure so far as possible every working man and woman in the Nation safe and healthful working conditions. . ." 29 U.S.C. § 651(b). The job of securing initial compliance with the Act has been delegated to the newly-created Occupational Safety and Health Administration of the United States Department of Labor. Inspectors from the Department are authorized to conduct investigations at places of employment for the purpose of detecting safety and health violations. 29 U.S.C. § 657; 29 C.F.R. § 1903 (1972); Occupational Safety and Health Administration, U. S. Dep't. of Labor, Compliance Operations Manual ["Manual"], ch. V (Jan. 1972). If, upon such investigation, the Secretary of Labor or his authorized representative believes that an employer has violated the Act or a regulation promulgated pursuant to the Act, he issues a citation describing the violation and fixing a reasonable time for its abatement. 29 U.S.C. § 658(a). The Secretary must also notify the employer of the penalty, if any, proposed to be assessed for the violation, and must advise him that he has 15 working days within which to notify the Secretary that he wishes to contest the citation or the proposed assessment of penalty. 29 U.S.C. § 659(a).

If the employer does not timely file such a "notice of contest" the citation and penalty become the "final order" of the Commission which cannot be reviewed by any agency or court. 29 U.S. C. § 659(a). The violation penalty may amount to $1000 per violation, and if wilful or repeated, up to $10,000 per violation. 29 U.S.C. § 666(a)–(c). Failure to abate by the end of the period specified in the citation subjects a non-contesting employer to an additional non-abatement penalty of no less than $100 per day of non-abatement for a minor violation and $1000 per day of non-abatement for a serious violation. 29 U. S.C. § 666(d); Manual, ch. XI, ¶ B, § 8(e), (f).

If the employer does timely file a "notice of contest" the Secretary must so notify the Commission. 29 U.S.C. § 659(c). Pleadings are then filed with the Commission, an examiner may be assigned, and a full-dress hearing with exhibits, testimony, and proposed findings and conclusions is held. 29 U.S.C. §§

---

2. The Act provides penalties specifically labeled "criminal" in addition to those labeled "civil" which plaintiffs attack. In their original brief plaintiffs appeared to read the Act as authorizing the Secretary to imprison employers who criminally violated the Act. During oral argument, however, they made it clear that they recognized that the patently criminal provisions of the Act could be imposed only upon indictment or information.

3. Plaintiffs' claim arises under the Constitution, and they alleged that fines in excess of $10,000 may be imposed upon them by defendants.

659(c), 661(i); 29 C.F.R. §§ 2200, et seq. At the conclusion of the hearing the examiner makes a decision and issues a report which becomes the "final order" of the Commission within 30 days after it is issued unless the Commission grants a review. 29 U.S.C. § 661(i); 29 C.F.R. § 2200.42(c). Such review is entirely discretionary and may be granted either on petition of a party or on the initiative of a member of the Commission. The review order of the Commission becomes "final" 30 days after its issuance. 29 U.S.C. § 659(c). Generally, the abatement period specified in the citation does not run during the course of the administrative proceedings so the contesting employer cannot be assessed any non-abatement per day penalty pending the entry of a "final order." 29 U.S.C. §§ 659(b), 666(d); Manual, ch. XI, ¶B, § 8(c) (2). If the Commission's order affirms the examiner's report, of course, the abatement period commences the day after the order becomes "final" and a failure to abate at the end of that period would subject the employer to a non-abatement per day penalty. Manual, *supra*. However, if the Occupational Safety and Health Administration determines that the employer did not initiate the review proceedings in "good faith" but solely for delay or avoidance of penalties, or if the employer contests only the amount of the violation penalty, upon entry of a "final order" affirming the examiner's report the abatement period will be considered to have retroactively commenced on the date specified in the citation and the employer will be assessed a non-abatement per day penalty retroactive from the day following the last day of the abatement period. 29 U.S.C., *supra*; Manual, ch. XI, ¶B, § 8(c) (3).

An aggrieved party may obtain judicial review of the examiner's report which became the "final order" of the Commission or of the Commission's review order by filing an appropriate petition in the United States Court of Appeals for the circuit in which the violation is alleged to have occurred or where the employer has his principal place of business, or in the Court of Appeals for the District of Columbia Circuit, within 60 days of the issuance of the order. 29 U.S.C. § 660(a). The filing of the petition does not, by itself, operate as a stay of the Commission's order, but the Court of Appeals may grant such a stay. 29 U.S.C., *supra*. The decree of the Court of Appeals is final and subject to review only by grant of the writ of certiorari by the Supreme Court. 29 U.S.C., *supra*.

As noted earlier, plaintiffs in this case have received citations and proposed penalties for alleged violations of the Act. Although they have initiated review proceedings before the Commission, they contend that those proceedings will be constitutionally infirm because full procedural due process and trial by jury will not be made available. They argue that since they attack the constitutionality of the very administrative remedies which defendants say they must exhaust, and since the Commission has no authority to declare these remedies unconstitutional, it is pointless to insist upon exhaustion in this case.

The Supreme Court has recognized that its broad pronouncement in Myers v. Bethlehem Shipbuilding Co., 303 U.S. 41, 50–51, 58 S.Ct. 459, 82 L.Ed. 638 (1938), that "no one is entitled to judicial relief for a supposed or threatened injury until the prescribed administrative remedy has been exhausted" is subject to numerous exceptions. *See* McKart v. United States, 395 U.S. 185, 89 S.Ct. 1657, 23 L.Ed.2d 194 (1969); 3, 1970 Supp. K. C. Davis, Administrative Law Treatise, ch. 20. Indeed, the Court has held that "where the only question is whether it is constitutional to fasten the administrative procedure onto the litigant, the administrative agency may be defied and judicial relief sought as the only effective way of protecting the asserted constitutional right." Public Utilities Commission of California v. United States, 355 U.S. 534, 539–540, 78 S.Ct. 446, 450–451, 2 L.Ed.2d 470 (1958). Nevertheless, we conclude that

the Court's decision in W. E. B. DuBois Clubs of America v. Clark, 389 U.S. 309, 88 S.Ct. 450, 19 L.Ed.2d 546 (1967), controls here.

The facts in *DuBois* were that the Attorney General petitioned the Subversive Activities Control Board for an order requiring the W. E. B. DuBois Clubs to register as Communist-front organizations. Prior to an administrative hearing on the matter before the Board, the Clubs sued in district court for declaratory and injunctive relief on the grounds that the Internal Security Act which authorized the proceedings before the Board was unconstitutional on its face and as applied. A three-judge court dismissed the complaint for failure to exhaust administrative remedies and the Supreme Court affirmed per curiam. The Court held that the district court correctly decided not to be forced to rule on difficult constitutional questions devoid of factual context when it was not even clear that the Internal Security Act would be applied to the objecting parties. The Court also noted that the Clubs could raise their constitutional claims under the Act by appealing the Board's decision to the Court of Appeals whose judgments are reviewable in the Supreme Court on certiorari.

All four plaintiffs in this case raised non-constitutional defenses to the Secretary's complaints before the Commission in addition to their constitutional claims. Lance Roofing, S. D. Mullins, and Diamond Roofing all asserted that the standards of the Act alleged to have been violated by them do not apply to the type of work they were performing when cited. J. L. Mabry Grading asserted that it did not own the particular vehicle cited as unsafe. Thus the hearing examiners, before whom the administrative cases are still pending, or the Commission, may ultimately decide that plaintiffs are not subject to the Act or that they did not violate its provisions. In view of this possibility, which would pretermit judicial consideration of the constitutional questions, we hold on the authority of *DuBois* that the complaint must be dismissed for failure to exhaust administrative remedies.

During oral argument, we expressed serious concern about the provisions of the Act for judicial review. It seemed to us that the only way an aggrieved employer could stop the abatement period specified in the citation from running during the pendency of an appeal to the Court of Appeals would be to get a stay order from that Court. We do not believe that any Court of Appeals today would relish the prospect of having to consider a motion for a stay each time an employer appeals from a "final order" of this Commission and we may assume that such stays will not be granted routinely. The citations received by these plaintiffs typically specify an abatement period of 30 days or less, and if plaintiffs eventually prosecuted an appeal to the Fifth Circuit, which might take a year, it appeared they would risk accumulated non-abatement penalties of from $33,500 to $335,000 for each alleged violation. We feared that such a risk would "chill" the right to judicial review secured by the Act.

In response to our concern, defendants have filed a supplemental brief in which they take the position that the Commission has the legal authority to stay its own "final orders" under the Administrative Procedure Act, 5 U.S.C. § 500 et seq. (1970), which is applicable to the Commission's procedures unless the Occupational Safety and Health Act of 1970 expressly supersedes it. 5 U.S.C. § 559. They refer to 5 U.S.C. § 705 which provides in part: "When an agency finds that justice so requires, it may postpone the effective date of action taken by it, pending judicial review." Contrary to plaintiffs' contentions, we find nothing in the Occupational Safety and Health Act which expressly prohibits the Commission from staying its own "final orders" and, on the assumption that the Commission will act in accordance with the position it has taken here,

we are satisfied that judicial review is effectively available to an aggrieved employer under the Act.[4]

For the foregoing reasons plaintiffs' complaint is dismissed.

It is so ordered.

---

4. It is true, as plaintiffs point out and as we have already noted, that if the Occupational Safety and Health Administration makes a determination that the employer did not initiate review proceedings in "good faith", or if the employer contests only the amount of the violation penalty, the abatement period will be considered to have commenced retroactively from the date specified in the citation and the employer may be assessed a non-abatement penalty retroactive from the day following the last day of the abatement period for each day of non-abatement during the review process. This might be considered another "chilling" factor since the Act does not appear to provide any effective means for challenging this action. However, these plaintiffs did not contest merely the amount of the violation penalties, and they have not alleged that they fear a determination will be made in their cases that they did not initiate review proceedings in "good faith." In any event, it would be only a matter of speculation at this point whether such a determination will be made in plaintiffs' cases, and we do not consider it sufficiently likely so as to warrant further consideration.