Ray MARSHALL, Secretary of Labor, United States Department of Labor

v.

BERWICK FORGE AND FABRICATING CO., a Division of Whittaker Corp.

Civil No. 78–1024.

United States District Court, M. D. Pennsylvania.

May 11, 1979.

Marshall H. Harris, Reg. Sol., Matthew J. Rieder, Philadelphia, Pa., for plaintiff.

John D. Taurman, Washington, D. C., Lewis H. Markowitz, York, Pa., Ronald M. Gaswirth, Jane Matheson, Dallas, Tex., for defendant.

## MEMORANDUM

NEALON, District Judge.

On October 18, 1978, after a hearing, this court held respondent/defendant (respondent) in civil contempt for failure to comply with a warrant of inspection issued by United States Magistrate Raymond J. Durkin. It was also ordered that respondent, in order to purge itself of the contempt, permit the inspection of the Berwick Forge and Fabricating Co. by agents of the Occupational Safety and Health Administration (OSHA). At the same time the court denied respondent's motion to quash the warrant. The inspection has now been completed and OSHA has issued citations and proposed penalties against respondent. The Oct. 18th rulings are currently being appealed by respondent. Presently before the court is a motion for a stay or injunction pending appeal, i. e., respondent wishes this court to enjoin any further action by OSHA based on the inspection, pending the appeal. For the reasons set forth below, the motion will be denied.[1]

## I. *Facts*

Whittaker Corporation maintains its principal offices in Los Angeles, California. Berwick Forge and Fabricating Co. (BFF) is a division of Whittaker located in Berwick, Pennsylvania. It is engaged in the heavy metal fabricating business, manufacturing box cars and other transportation related products. The BFF facility is quite

---

1. Also before the court are motions by plaintiff/petitioner (petitioner) to strike affidavits submitted in support of respondent's motion for a protective order regarding discovery requests, and to quash deposition subpoenas. The motion to strike the affidavits will be denied. The discovery motions will be dismissed. Given my decision on respondent's motion, the discovery problems are moot.

large, containing numerous buildings and over two (2) million square feet of inside and outside work area. *See* Doc. 13, attachment 2, affidavit of Frank Miller, filed December 18, 1978.

On October 10, 1978 Leo Carey, area director of the Wilkes-Barre office of OSHA, applied to United States Magistrate Raymond J. Durkin for a warrant authorizing inspection of the BFF plant. It is undisputed that prior to seeking the warrant, no OSHA official had requested a voluntary entry in order to make this inspection. In the warrant application and the addendum attached thereto it was asserted that the Wilkes-Barre office had received employee complaints regarding BFF on August 21, 1978, September 18, 1978, and October 5, 1978.[2] The substance of the complaints alleged approximately one hundred seventy (170) safety and/or health violations. These alleged violations varied from what would appear to be minor problems, such as aisles not being kept clean, to more serious type violations, such as welders having to work in water and problems with electrical equipment getting wet due to leaks in the roof. Respondent asserts, and petitioner does not controvert, that the alleged violations related to approximately 15% of the BFF work areas, inside and outside.

The warrant application, inter alia, also indicated that BFF had been inspected in November 1974 and November 1975 and that these inspections had resulted in the issuance of citations. Some of the citations resulting from the later inspection were for violations for which citations had been previously issued.[3] The application noted that during the calendar year of 1977 BFF had reported 270 cases of work related injuries and illnesses and "a considerable period of time [had] elapsed since the last complete inspection of the facility." Based on the warrant application and its addendum Magistrate Durkin issued a warrant which somewhat tracked the language of 29 U.S.C. § 657(a)(2) and authorized a complete "wall to wall" inspection.[4]

Armed with this ex parte inspection warrant an OSHA inspector, Mr. Farranato, and others, arrived at the BFF plant on Oct. 11th and requested immediate entry in order to carry out the inspection. Mr. Farranato was asked to wait while respondent consulted with its attorney in order to determine whether to permit the inspection. After waiting a few hours without receiving permission to inspect, Mr. Farranato left, having decided that he was being denied entry. OSHA subsequently, on Oct. 13, 1978, filed its petition for an adjudication of civil contempt for failure to comply with the warrant. That same day respondent filed its motion to quash.

At the Oct. 18th hearing respondent basically contended that the warrant was invalid because there was no probable cause and implicitly, because it was overbroad. *See* Doc. 1, Docs. 8 & 9 in Misc. No. 78–121, Motion to quash and memorandum in support thereof, filed Oct. 12, 1978; Doc. 7, transcript of Oct. 18th hearing, filed Nov. 9, 1978 (hereinafter tr.). It was also asserted that OSHA could not legally carry out an inspection since it had not followed its statutory mandate to make a determination that reasonable grounds for an inspection

---

2. It appears that OSHA actually first received the latter complaints orally from employee representatives on Oct. 3, 1978. The representatives were then told to supply more specifics, which was done Oct. 5, 1978. Most of these specific complaints were retyped by OSHA and formed the addendum to the warrant application. It also appears that the decision to apply for a warrant in order to inspect BFF was made Oct. 3rd. *See* Doc. 7, transcript of Oct. 18th hearing, pp. 42–45, filed Nov. 9, 1978.

3. The application also stated that the last inspection of BFF occurred in March 1978. This inspection was limited by court order to one crane, see *Whittaker Corp. v. OSHA*, Civ. No. 77–730 (M.D.Pa. Mar. 7, 1978) appeal dismissed, 594 F.2d 855 (3rd Cir. 1979), and also resulted in citations which are currently being contested.

4. The original warrant contemplated that the inspection would be completed within twenty (20) days. However, on December 5, 1978, pursuant to a stipulation by the parties, plaintiff was given until Dec. 22, 1978 to complete the inspection. *See* Doc. No. 5, filed Dec. 5, 1978.

existed. *See* Id.; 29 U.S.C. § 657(f)(1). OSHA called two witnesses, Mr. Carey and Mr. Farranato. Their testimony in essence related to the circumstances surrounding the receipt of the employee complaints, the decision to seek a warrant, and the alleged refusal of respondent to permit the inspection. Respondent did not call any witnesses, but did cross examine petitioner's witnesses and make an oral argument. At the conclusion of the hearing, as stated supra, I denied the motion to quash, held respondent in civil contempt, and ordered it to purge the contempt by permitting the inspection. The inspection has now been completed and, hence, the contempt has been fully purged. The court has been orally informed by counsel that OSHA, based on the inspection, issued extensive citations and proposed penalties which will now presumably be contested through the OSHA administrative process.[5]

Respondent asserts that if its motion is not granted it will be irreparably injured because of the substantial costs which it will incur during the pendency of its appeal by administratively defending the OSHA citations and proposed penalties resulting from the alleged illegal inspection.[6] It represents that petitioner and any other interested persons would not be injured by the granting of the motion because there are no imminent dangers at the BFF plant (which petitioner does not controvert), and because the administrative review procedure is a time consuming process in any event, allegedly taking from two to three years in a case of this kind. Respondent further maintains that it will be successful on appeal because 1) the warrant should have been quashed since it was obtained contrary to the rules and regulations of OSHA in that it was procured ex parte and without first seeking voluntary entry; 2) the warrant was invalid because both it and the underlying application lacked the necessary specificity, i. e., the warrant was overbroad; and 3) this court lacked subject matter jurisdiction to compel the entry of OSHA agents for the purpose of the inspection. Petitioner basically controverts respondent's assertions and argues additionally that 1) since the contempt has been purged and the inspection completed there is nothing for this court to stay; i. e. the instant motion, and impliedly the appeal, are moot; 2) the present action does not confer jurisdiction in this court over the OSHA administrative process, the court may not interfere with such process and enjoining any further action based on the inspection would be inappropriate[7]; 3) the appeal will fail because respondent must exhaust its claims through the OSHA administrative review procedure; and 4) OSHA, the public, and respondent's employees would be irreparably harmed by the extra delay which would result from the instant motion being granted.

## II. *Discussion*

 Under Rule 8(a) of the Federal Rules of Appellate Procedure an application for an injunction or a stay pending appeal

---

5. An employer has fifteen (15) working days within which to notify the Secretary of Labor that he wishes to contest the citations or proposed assessment of penalties. 29 U.S.C. § 659(a). Timely contested citations and/or proposed penalties are tried before an Administrative Law Judge of the Occupational Safety and Health Review Commission; *see* 29 U.S.C. §§ 651(3), 659(c), 661; 5 U.S.C. § 554. The judge's decision becomes the Review Commission's final order unless within thirty (30) days a Commissioner directs further administrative review. 29 U.S.C. § 661(i). An employer may seek review of the Review Commission's final order by timely petitioning the appropriate United States Court of Appeals. 29 U.S.C. § 660(a). The commencement of proceedings before the appellate court does not, unless so ordered by the court, operate to stay the final order of the Review Commission.

6. Respondent will most likely not suffer any abatement costs pending appeal because contesting in good faith the citations and/or proposed penalties through the administrative procedures as set out in n. 5, supra, suspends the employer's obligation to take corrective action until the administrative review process is completed. 29 U.S.C. § 659(b).

7. Petitioner's brief was filed prior to the issuance of citations and actually only argued that enjoining such issuance would be inappropriate. However, that argument also implies that enjoining any OSHA action based on the inspection would similarly be improper.

must ordinarily be sought in the first instance in the District Court. Fed.R.Civ.P. 62 regulates the grant of a stay or injunction by the district court. *Betts v. Coltes,* 449 F.Supp. 751 (D.Hawaii 1978); 9 Moore and Ward, Moore's Federal Practice, § 208.-02 at 1404 (1979). The fact that respondent has filed a notice of appeal does not defeat this court's jurisdiction. *See Betts v. Coltes,* supra. Fed.R.Civ.P. 62(d) provides that except in three specific instances a party may stay execution of a judgment by filing a supersedeas bond in an amount which, in effect, is deemed sufficient by the district court.[8] One of the specific instances where a party cannot obtain a stay merely by filing the proper bond is when an appeal is taken from a final order granting an injunction. It appears to the court that the Oct. 18th order was akin to an injunction order in that it refused to enjoin the inspection, i. e., the motion to quash was denied and it, in effect, ordered respondent to submit to the inspection. Therefore, I believe that respondent's motion is directed at the court's sound discretion under the terms of Fed.R.Civ.P. 62(c). *See Evans v. Buchanan,* 424 F.Supp. 875 (D.Del.1976), *cert. denied,* 434 U.S. 880, 98 S.Ct. 235, 54 L.Ed.2d 160 (1977), *reh. den.,* 434 U.S. 944, 98 S.Ct. 442, 54 L.Ed.2d 306 (1977). In pertinent part that rule provides:

> (c) Injunction pending appeal. When an appeal is taken from an interlocutory or final judgment granting, dissolving, or denying an injunction, the court in its discretion may suspend, modify, restore, or grant an injunction during the pendency of the appeal upon such terms as to bond or otherwise as it considers proper for the security of the rights of the adverse party . . .

The criteria to be applied in determining whether respondent is entitled to the stay or injunction pending appeal are: 1) irreparable injury to the petitioner (here respon-

dent) unless the injunction or stay is granted; 2) no substantial harm to other interested persons; 3) no harm to the public interest; and 4) the likelihood that petitioner will prevail on the merits of the appeal. *See Resident Advisory Board v. Rizzo,* 429 F.Supp. 222 (E.D.Pa.1977); *Evans v. Buchanan,* 424 F.Supp. 875 (D.Del.1976), *cert. denied,* 434 U.S. 880, 98 S.Ct. 235, 54 L.Ed.2d 160 (1977), reh. den., 434 U.S. 944, 98 S.Ct. 442, 54 L.Ed.2d 306 (1977); 7 Moore's Federal Practice, § 62.05 at 62–25 (1974).[9]

■■ Before considering the four factors, it is necessary to address petitioner's contentions that 1) this motion is moot because the inspection is complete and the contempt is fully purged; and 2) this court cannot now interfere with the OSHA administrative process. As to the second contention, that is a question of exhaustion and it would not be inappropriate interference with administrative procedures to consider those claims for which requiring exhaustion would not be proper. *See Weyerhaeuser Co. v. Marshall, Secretary of Labor,* 592 F.2d 373 (7th Cir. 1979). As to the first contention, although it is true that respondent is no longer in civil contempt, it is possible that the Court of Appeals would determine that this situation calls for the application of an exception to the mootness doctrine and that appellate review is appropriate. *Cf. United States v. Frumento,* 552 F.2d 534 (3rd Cir. 1977) (witness held in civil contempt for refusing to testify; he was incarcerated until he purged the contempt or until the proceedings at which he did not testify were terminated; he took all possible action to get judicial reconsideration of the contempt decision; appellate review deemed appropriate even though the proceedings had terminated and the witness had been released from confinement). Furthermore, and this is the most important factor, besides holding respondent in civil

---

8. Respondent does not contend here that it is entitled to a stay as a matter of right by the filing of an appropriate bond and I agree.

9. Respondent does not agree that its motion is the equivalent of a request for a stay from an

injunction order. *See* Doc. 28, p. 3, n. 1, filed Jan. 22, 1979. However, the factors that it contends the court should consider are basically those set out above. *See* Doc. 17, pps. 5–6, filed Dec. 28, 1978.

contempt, the Oct. 18th order also upheld the warrant and denied the motion to quash. Numerous cases have considered the validity of an OSHA inspection warrant and/or an appeal from the denial of a motion to quash the warrant after the inspection was completed. *See, e. g., In re Worksite Inspection of Quality Products, Inc.*, 592 F.2d 611 (1st Cir. 1979); *Weyerhaeuser Co. v. Marshall, Secretary of Labor*, supra; *Morris v. United States, Dept. of Labor*, 439 F.Supp. 1014 (S.D.Ill.1977), *appeal dismissed*, No. 78–1051, (7th Cir. April 17, 1979). I assume that the United States Court of Appeals for the Third Circuit will do the same. If that court determines that the warrant was in fact invalid, enjoining future OSHA action based on the inspection might be appropriate.

A) Irreparable Injury; Harm to Other Interested Parties; Harm to the Public Interest

 As stated, respondent claims that it will be irreparably injured if its motion is not granted inasmuch as it will have to expend large sums in defending against the citations and proposed penalties through the OSHA administrative channels while its appeal is pending. Specifically, respondent asserts that it will have to hire experts, perform costly tests, undertake feasibility studies, and pay its attorneys. This would all allegedly be for naught if the Court of Appeals reverses the Oct. 18th order and determines it is appropriate to enjoin any OSHA action based on the inspection.

It has been specifically held that requiring one to exhaust claims through the administrative forum of OSHA does not expose one to irreparable injury. *See Marshall v. Able Contractors, Inc.*, 573 F.2d 1055, 1057 (9th Cir. 1978). Having to oppose the citations through the administrative process while the appeal is pending is analogous to having to exhaust. And respondent recognizes that historically courts have not given great consideration to the economic burdens encountered by having to contest an issue through administrative

channels. Nevertheless, I am willing to assume that having to pursue OSHA administrative remedies pending an appeal may represent irreparable injury. However, petitioner, respondent's employees, and the public in general have an interest here in seeing OSHA carry out its statutory mandate with as little delay as possible.

In enacting the Occupational Safety and Health Act of 1970, 29 U.S.C. § 651 et seq. (the Act), Congress specifically declared its purpose to be, ". . . to provide for the general welfare, to assure so far as possible every working man and woman in the Nation safe and healthful working conditions and to preserve our human resources." 29 U.S.C. § 651(b). Although there are admittedly no imminent dangers at the BFF plant, that does not detract from the fact that OSHA has a right, and indeed a duty, to pursue its statutory mandate. Furthermore, I believe that the employees at the BFF plant are also interested parties here and they have a "right" to see that any violations which may exist at the plant be corrected as quickly as possible. And the public in general has an interest in seeing the working areas of the country comply with the standards of the Act. I believe that the interests of petitioner, respondent's employees, and the public are at least of equal weight to respondent's interest in not having to engage in the allegedly costly procedure of pursuing its administrative remedies pending appeal. Given my view of the equities, respondent must show a strong substantial likelihood of success in order to prevail on its motion. *See Washington Metropolitan Area Transit Commission v. Holiday Tours, Inc.*, 182 U.S.App. D.C. 220, 559 F.2d 841 (1977).

B) Likelihood of Success on Appeal

I think it should be noted that attempting to predict the likelihood of an appellant's success with an appeal is a difficult inquiry for the trial judge. This is especially true here, because we are dealing with an emerging area of law. Notwithstanding these concerns, the inquiry will be undertaken and the court will set out its assess-

ment of the strength of respondent's claims regarding the correctness of the Oct. 18th order.

## 1) Failure to first seek voluntary entry

It is clear that the OSHA regulations do in fact contemplate that voluntary entry will be requested from an employer for the purposes of an inspection before OSHA seeks compulsory process. *See* 29 C.F.R. § 1903.4; *Marshall v. Barlow's, Inc.*, 436 U.S. 307, 98 S.Ct. 1816, 56 L.Ed.2d 305 (1978). However, petitioner maintains that the regulations do not preclude the obtaining of compulsory process without first requesting entry when it is clear to OSHA personnel that the employer will not voluntarily consent to an inspection. Petitioner asserts that it determined that voluntary entry would be refused at BFF and based this determination on the facts that Whittaker had once refused entry there and at a facility in Renovo, Pennsylvania and had instituted suits to enjoin inspections by OSHA at the two locations. Petitioner maintains that the regulations are concerned with the situation where voluntary entry can be anticipated, not with the situation presented here. Besides disputing petitioner's interpretation of the regulations, respondent asserts that petitioner, in fact, had no reasonable grounds to expect that an inspection would not be permitted.

It is unlikely that respondent will prevail on this claim because 1) it was not raised at the Oct. 18th hearing and, hence, will probably not be considered by the Court of Appeals. *See Newark Morning Ledger Co. v. United States*, 539 F.2d 929 (3rd Cir. 1976); and 2) it is clearly the type of claim which should be exhausted through the OSHA administrative process. *See In the Matter of Restland Memorial Park*, 540 F.2d 626 (3rd Cir. 1976) (appeal from a denial of motion to quash OSHA inspection warrant; necessary to exhaust claim that appellant was not subject to the jurisdiction of the Act). The main rationales behind requiring exhaustion are to prevent premature interference with agency process and to allow the agency to function efficiently, afford the parties and the courts the benefit of the agency's expertise, compile a record for judicial review, and allow the agency to correct its own mistakes. *See McKart v. United States*, 395 U.S. 185, 193–194, 89 S.Ct. 1657, 23 L.Ed.2d 194 (1969); *In the Matter of Restland Memorial Park*, supra. Exhaustion will allow the Review Commission to apply its expertise and make an initial determination as to whether the request for voluntary entry is mandatory under the regulations in our situation.[10] Moreover, the development of a factual record is appropriate here.[11]

## 2) The ex parte warrant

Respondent contends that under the OSHA regulations an ex parte warrant is not authorized and, hence, the procuring of one here was unlawful and the warrant should have been quashed. It argues that although the Supreme Court in *Marshall v. Barlow's, Inc.*, supra, indicated that a regulation providing that the Secretary of Labor could proceed ex parte to obtain a warrant would be statutorily and constitutionally permissible, it also stated, in effect, that there currently exists no regulation which would permit such action. The one case which squarely faced and analyzed this issue has agreed with respondent's argument. *See Cerro Metal Products v. Marshall*, 467 F.Supp. 869 (E.D.Pa.1979) (denying motion

---

**10.** An agency's interpretation of its own regulations is given great weight. *See Udall v. Tallman*, 380 U.S. 1, 16, 85 S.Ct. 792, 13 L.Ed.2d 616 (1965).

**11.** Respondent asserts that exhaustion is not appropriate when the validity of a warrant is at issue. I agree that certain types of claims regarding the validity of a warrant need not be exhausted, *see* infra. However, it is not the fact that a warrant is involved that determines whether exhaustion is appropriate, but rather it is the nature of the claim which is important. Indeed, as respondent itself notes, *In the Matter of Memorial Park*, supra, arose in the context of a motion to quash a warrant. And the claim that an agency regulation was violated presents as strong a case for exhaustion as does the claim that the Act itself did not apply to the appellant.

to dissolve preliminary injunction).[12, 13] Nonetheless, for the following reasons, I believe that respondent will not succeed with this contention on appeal.

First, this issue was also not raised at the Oct. 18th hearing.[14] Secondly, this case is significantly different from that presented in *Cerro Metal Products,* supra. Although petitioner here did procure the warrant ex parte, respondent, at the Oct. 18th hearing, was given an opportunity to be heard and to challenge its validity. Even assuming that Judge Pollack in *Cerro Metal Products,* supra, was correct in his holding and although he arguably indicated that a full blown preinspection hearing was necessary under the OSHA regulations, *see Cerro Metal Products v. Marshall,* No. 78–3713 (E.D.Pa. Nov. 27, 1978) (grant of preliminary injunction), nothing in the Supreme Court's opinion in *Marshall v. Barlow's, Inc.,* supra, or in the OSHA regulations (assuming they do not permit an ex parte warrant) indicates that an employer would be entitled to more of a preinspection hearing than was provided here.[15, 16]

Thirdly, especially given the fact that respondent did receive preinspection notice and an opportunity to be heard, the Court of Appeals might require administrative exhaustion of this claim. Once again, there is a question of what OSHA's regulations permit. It may well be that the Review Commission, even assuming the invalidity of an ordinary ex parte warrant, should be given the opportunity to determine whether the Oct. 18th hearing satisfied what was contemplated by the regulations when it used the term "compulsory process." *See* 20 C.F.R. § 1903.4. Lastly, even though respondent is attempting to invalidate the agency's action, application of the exclusionary rule and the suppression of evidence obtained during the inspection may not be appropriate here. *See United States v. Caceres,* 440 U.S. 741, 99 S.Ct. 1465, 59 L.Ed.2d 733 (1979). This is especially true given that procuring the warrant ex parte did not, in and of itself, offend the Constitution, *see* supra, and since it appears to the court that it would have been reasonable for petitioner to believe that an ex parte

**12.** That case also held that the Secretary of Labor's December 22, 1978 revision to 29 C.F.R. § 1903.4 was ineffective to cure a prior attempt to secure an ex parte warrant and was invalid because it was not promulgated pursuant to the procedures set out in the Administrative Procedure Act, 5 U.S.C. §§ 551 et seq.

**13.** But *see In the Matter of Establishment Inspection of Stoddard Lumber Company, Inc.,* Civ. No. M–S–1931, p. 3 (D.Idaho Jan. 24, 1979) where it was held, without discussion, that the Secretary of Labor was authorized and empowered to seek an ex parte inspection warrant. And cases have held that a United States Magistrate has the authority to issue an ex parte inspection warrant upon application from OSHA. *See, e. g., Pelton Casteel, Inc. v. Marshall,* 588 F.2d 1182 (7th Cir. 1978); *Marshall v. Silberline Manufacturing Co.,* Misc. No. 77–24 (M.D.Pa. Oct. 20, 1977).

**14.** In fact, respondent's counsel specifically stated "I'm not saying there is anything wrong with these ex parte warrants . . . ." *See* tr. at 87.

**15.** It is true that at the hearing the court, in ruling on the validity of the warrant, did not look beyond that which was in front of Magistrate Durkin. However, respondent specifically stated that it agreed that the appropriate

record for me to consider was that which was in front of the Magistrate. *See* tr. at 5. And, although the question of OSHA's authority to seek an ex parte warrant was not at issue, it has been specifically held that the court need only examine the warrant application submitted by OSHA in order to determine if there was probable cause. *See Weyerhaeuser Co. v. Marshall, Secretary of Labor,* 592 F.2d 373, at 377 (7th Cir. 1979). Furthermore, there have been no allegations here of the type that would ordinarily permit a litigant, under *Franks v. Delaware,* 438 U.S. 154, 98 S.Ct. 2674, 57 L.Ed.2d 667 (1978), to go beyond what was presented to a Magistrate in contesting the validity of a warrant, albeit one which was lawfully obtained ex parte.

**16.** It is arguable that once the warrant was procured ex parte no subsequent hearing could cure its alleged illegality. Furthermore, a litigant should not have to risk civil contempt in order to get its preinspection day in court, assuming it is entitled to one. However, I do not find those arguments persuasive here because, as stated, the authority of OSHA to procure a warrant ex parte was not before me and in point of fact respondent did get its preinspection day in court.

warrant was authorized under its regulations. *See United States v. Caceres*, supra.

### 3) Subject Matter Jurisdiction [17]

In *Marshall v. Gibson's Products, Inc. of Plano*, 584 F.2d 668 (5th Cir. 1978) the Secretary of Labor sued to require the employer to submit to a warrantless inspection of its premises. The employer counterclaimed on the grounds that a warrantless inspection was unlawful. The court sua sponte raised the issue of subject matter jurisdiction. It held that Congress did not intend to provide jurisdiction under the Act in the federal courts to grant the injunctive relief sought and, hence, the action had to be dismissed. It distinguished *Marshall v. Barlow's*, supra, on the grounds that there the employer had instituted his claim as an independent action for injunctive and declaratory relief. Id. at 672, n. 5.[18]

Although *Gibson's Products* specifically stated it was not ruling on whether its holding applied when a search warrant is sought, id. at 673, n. 6, I agree with respondent that the case does, in effect, hold that OSHA cannot utilize the federal courts to compel an employer to submit to an inspection. To say that a warrant may be utilized to compel entry, but not an injunction, would appear to elevate form over substance. However, I am persuaded by Judge Tuttle's dissent in *Gibson's Products* that if the ruling is correct it makes *Marshall v. Barlow's, Inc.*, supra, an exercise in futility. It would also make the numerous cases which have considered the issue of how and under what circumstances OSHA may compel an inspection to be exercises in futility. And it means that Congress has passed this elaborate statutory scheme, but has not provided any enforcement mechanism to compel employers to permit inspection. I believe that the United States Court of Appeals for the Third Circuit will follow the

holding in *Establishment Inspection of Gilbert and Bennett Manufacturing, Marshall v. Chromalloy American Corp.*, 589 F.2d 1335, 1344 (7th Cir. 1979) where the court specifically declined to follow *Gibson's Products* and stated that Judge Tuttle's dissent expressed the "better view." With all due respect, it appears to this court that the dissent is clearly the "better view." And *see Marshall v. Weyerhaeuser Company*, 456 F.Supp. 474 (D.N.J.1978); *Brennan v. Buckeye Industries, Inc.*, 374 F.Supp. 1350 (S.D.Ga.1974); *Cf. Marshall v. Barlow's, Inc.*, supra, 436 U.S. at 317–18 n. 12, 98 S.Ct. 1816.

### 4) Scope and Specificity of the Warrant

I concur with respondent that this type of claim does not have to be exhausted. First, it is agreed that the Administrative Law Judge will not consider whether a United States Magistrate made a correct determination that probable cause existed and that the warrant should be as broad as permitted by the statute. Secondly, the rationales behind the exhaustion requirement, *see* supra, would not be satisfied by mandating exhaustion of this claim. I accept the analysis in *Weyerhaeuser Company v. Marshall*, 592 F.2d 373 (7th Cir. 1979). Also *see Morris v. United States Dept. of Labor*, 439 F.Supp. 1014 (S.D.Ill.1977), *appeal dismissed*, No. 78–1051, (7th Cir. April 17, 1979); *contra, In re Worksite Inspection of Quality Products, Inc.*, 592 F.2d 611 (1st Cir. 1979).

In the area of criminal searches it is necessary that the warrant, consistent with the probable cause, describe with particularity the area to be searched and items to be seized. *See United States v. Votteller*, 544 F.2d 1355 (6th Cir. 1976). In the context of an OSHA inspection, there are two types of "searches." One is an administrative type, i. e. conducted pursuant to a

---

**17.** Although this claim was also not raised at the Oct. 18th hearing, it is not waived. Lack of subject matter jurisdiction may be asserted at any time.

**18.** However, the employer in *Barlow's* instituted his action only after the Secretary of Labor

had petitioned a District Court for an order compelling the inspection and had received such an order. *See Marshall v. Barlow's, Inc.*, 436 U.S. 307, 310, 98 S.Ct. 1816, 56 L.Ed.2d 305 (1978).

general plan based on reasonable legislative or administrative standards. The other is based on a belief that violations exist at the particular place of business. *Cf. Marshall v. Barlow's, Inc.,* supra. As to the latter type of inspection, the type we have here, the court has been able to discover only three cases which have specifically considered the scope issue.[19] *See Whittaker Corp. v. OSHA,* Civ. No. 77–730 (M.D.Pa. Mar. 7, 1978), *appeal dismissed,* 594 F.2d 855 (3rd Cir. 1979) probable cause to believe that a crane at the BFF plant represented a safety hazard; warrant limited in scope to an inspection of the crane); *Marshall v. Silberline Manufacturing Co., Inc.,* Misc. No. 77–24 (M.D.Pa. Oct. 20, 1977) (fire and explosion at the factory had resulted in employee injuries; incompatible with enforcement of safety and health regulations to limit the scope of the inspection); *Dravo v. Marshall,* Civ. No. 77–284 (W.D.Pa. April 5, 1977), aff'd by judgment order, 578 F.2d 1373 (3rd Cir. 1978) (probable cause based on numerous employee complaints; inappropriate to limit the scope).

The court is of the opinion that limiting the scope of an administrative inspection would, in certain situations, be appropriate. *Cf. Marshall v. Barlow's, Inc.,* supra. However, I do not believe that this case represents such a situation. As stated, there were approximately one hundred seventy (170) suspected infractions cited plus a history of problems and violations. Even assuming the specific alleged violations referred to only 15% of the working area of the plant, or over three hundred thousand square feet, that is more than sufficient to permit an inspection as broad as that which is contemplated by the Act. To have limited the scope here I believe would have been clearly inappropriate and inconsistent with the avowed purposes of the Act.[20]

In conclusion, I do not believe that respondent has approached meeting its burden that it has a substantial likelihood of succeeding on the merits of its appeal. That, coupled with the court's assessment of the equities here, *see* supra, compels that its motion be denied.

---

**19.** As to the former type, it has been held that limiting the inspection beyond that contemplated by the Act would be inconsistent with the statute. *See Establishment Inspection of Gilbert and Bennett Manufacturing Company, Marshall v. Chromalloy American Corp.,* 589 F.2d 1335 (7th Cir. 1979).

**20.** Respondent places much reliance on *Michigan v. Tyler,* 436 U.S. 499, 98 S.Ct. 1942, 56 L.Ed.2d 486 (1978). There it was held that once a fire was extinguished and the firemen had left the premises a warrant was required to reenter the building in order to search for the cause of the fire. The court detailed the type of inquiry a magistrate would be expected to make and emphasized that a major function of the warrant was to apprise the property owner with sufficient information to reassure him of the entry's legality. Respondent argues that there is nothing on the record here to show whether Magistrate Durkin made the type of inquiries contemplated by *Tyler.* But a magistrate is not required to write an opinion every time he issues a warrant. Furthermore, as stated, limiting the scope of the warrant would not have been appropriate here. Also, respondent was apprised of the scope of the warrant and, especially after the Oct. 18th hearing, was assured of the legality of the search. The fact that the warrant did apprise respondent of the scope of the search, albeit the broad scope, satisfies the concern expressed in *Marshall v. Barlow's,* supra, 436 U.S. at 323, 98 S.Ct. 1816.